# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **Civil No. 3:26-cv-00414** |
| | ) | |
| THE REAL PROPERTY LOCATED AT | ) | |
| 4904 REAGAN DRIVE, CHARLOTTE, | ) | |
| NORTH CAROLINA 28206 | ) | |

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

NOW COMES Plaintiff, the United States of America, by and through Russ Ferguson, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture against the above-captioned real property (the "Property" or the "Garden Inn"),[1] and alleges as follows:

### INTRODUCTION

1.     The Garden Inn—a hotel near the West Sugar Creek and I-85 interchange—is unique among Charlotte's high crime locations. This is not because many of the hotel's long-term residents use the location to regularly traffic drugs (though they do). Nor is it because the hotel employees turn a blind eye to the criminal activity occurring at the Property (though, again, they do). Rather, the Garden Inn knowingly employs a "security team" of mostly convicted felons who—rather than help prevent criminal activity on the Property as their role would suggest—themselves use the hotel as a base of operations to store and deal drugs and guns.

2.     The drug trafficking on the Property is extensive. In the past four months or so alone, law enforcement conducted approximately twenty-seven (27) controlled purchases of illegal

---

[1] This Forfeiture Complaint sometimes refers to the defendant property as the "Garden Inn" given its operation as a hotel under the name Garden Inn & Suites during the relevant time period, but to be clear, the United States *only* seeks forfeiture of the real property, and *does not* seek any forfeiture of the business operating there.

drugs and/or guns there. A large portion of the illegal drugs in those controlled buys were sold by four separate members of the Garden Inn Security team, including sales of crack-cocaine, suspected fentanyl, marijuana, and what was represented to be ecstasy pills (but turned out to be methamphetamine when tested).

3.     The Garden Inn security team used their jobs at the Property as cover to make these drug deals, with each deal occurring either inside various hotel rooms or in the Property's parking lot. Some even wore their security uniform during the drug deals.

4.     Overall, between January 1, 2024, and May 18, 2026, the Charlotte-Mecklenburg Police Department ("CMPD") received **590 calls for service** and made **47 arrests** at the Property. This averages out to CMPD having to respond to the Property **roughly four out of every five days** over the past two years. Additionally, more than 56 known suspects to law enforcement have home addresses listed there.

5.     In May 2026, a federal grand jury returned criminal indictments charging five individuals associated with and/or operating out of the Garden Inn with firearms or drug trafficking offenses—including the Garden Inn's head of security.

6.     On May 27, 2026, law enforcement executed arrested warrants for the indicted individuals at the Garden Inn. Further, on May 27, 2026, law enforcement searched certain areas of the Garden Inn pursuant to a federal warrant, which uncovered guns and drugs throughout the Property. Following the search, at least three additional individuals were arrested on state level drug and firearms offenses.

7.     Under 21 U.S.C. § 881(a)(7), real property that, *inter alia*, is used to commit or facilitate the commission of Title 21 offenses (*e.g.* drug trafficking) is subject to forfeiture. "The term 'facilitate' implies that the property need only make the prohibited conduct less difficult or

more or less free from obstruction or hindrance." *United States v. Schifferli*, 895 F.2d 987, 990 (4th Cir. 1990) (cleaned up). The Garden Inn has been the site of a significant amount of drug trafficking over the years, including numerous controlled purchases of drugs and firearms inside the Property's rooms and on its premises. In that regard, the Property itself has long served as a means to facilitate drug trafficking—permitting drugs to be safely stored there and for drug deals to covertly take place within its walls, all with the blessing and involvement of the Garden Inn security team. Thus, the Property is subject to federal forfeiture.

## NATURE OF THE ACTION

8. This is a civil forfeiture action *in rem* against the real property located at 4904 Reagan Drive, Charlotte, NC, 28206, more particularly described in a deed recorded at Book 26176, pages 85-87 in the office of the Mecklenburg County Register of Deeds, together with all appurtenances, improvements, and attachments thereon.

9. The Property is subject to forfeiture under 21 U.S.C. § 881(a)(7), which authorizes the forfeiture of real property—including any right, title, and interest in the whole of any lot or tract of land and any appurtenances or improvements—because it is used, or intended to be used, to commit or to facilitate the commission of, violations of 21 U.S.C. §§ 841 and/or 846 (the Controlled Substances Act).

10. Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. §§ 983 and 985, 19 U.S.C. §§ 1602-1621, and, to the extent applicable, the Federal Rules of Civil Procedure and accompanying Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

11. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355. These statutes confer original jurisdiction to federal district courts of all civil actions, suits,

or proceedings commenced by the United States and any action for the forfeiture of property incurred under any act of Congress.

12. Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred within the Western District of North Carolina. Venue is also proper pursuant to 28 U.S.C. § 1395(b) because the Property is located within the Western District of North Carolina.

13. Based on the following facts, verified by CMPD Detective Dennis Miller, this action seeks the forfeiture of all right, title, and interest in the Property.

<strong>FACTS GIVING RISE TO FORFEITURE</strong>

*Background on the Property*

14. The Property is located shortly off the interchange of I-85 and West Sugar Creek Road, and operates as an extended stay hotel (offering nightly, weekly, and monthly rates) with roughly 90 rooms:



(Google Street View March 2026)

15. It is owned by Charlotte Land Holders LLC, whose 2026 annual report filed with the North Carolina Secretary of State describes it as a real estate/investment business located at the Property's address.

16. The annual reports lists Jessica Woodard as "Executive Manager" and George S. Trakas as "Manager."[2] Woodard runs the hotel and has represented herself as its owner.

17. The Garden Inn employs a security team. For example, social media posts on the hotel's Facebook page from January to April 2026 advertised, *inter alia*, "24/7 On-Site Security," and touted the purported safety at the Property.

18. Members of the security team at the Garden Inn often have extensive criminal records and/or are previously documented gang members, including with the Bloods.

19. The Garden Inn's head of security is Marcus "Grizz" Logan, whose criminal history (prior to May 2026) includes arrests for murder, drug trafficking, assaults with deadly weapons, and robbery, with convictions for assault with a deadly weapon inflicting serious injury, robbery with a dangerous weapon, and felony narcotics violations. As a convicted felon, Logan is prohibited from possessing firearms, but has been observed carrying a pistol at the Garden Inn.

20. Despite his employment there, Logan utilizes fake names—Alfred Romero and Fred Black—on the hotel rent rolls.

21. In 2024, CMPD noticed Logan working as security at the Garden Inn while on an electronic monitor. Logan was also known to law enforcement as a drug dealer in the West Sugar Creek Road and I-85 corridor.

22. A CMPD detective met with Woodard and expressed concerns regarding the Garden Inn's employment of a violent offender known to sell narcotics as security, including

---

[2] Since at least 2006, the Property has been owned by several corporations associated with Trakas and/or Woodard.

concerns Logan's security role would increase the likelihood of narcotics possession and sales on the Property. The CMPD detective also discussed with Woodard the need for a vetted application process with background checks. Woodard's response was simply that she asked Logan about the electronic monitor and was told it was all a misunderstanding. Despite CMPD's warning, Logan continued to live and work as security chief at the Garden Inn.

23. Logan utilized his security job at the Garden Inn as cover for dealing drugs there. From January to May 2026, law enforcement conducted five controlled purchases of drugs and/or guns from Logan—with each deal occurring inside of a Garden Inn room. Moreover, Logan often wore his security uniform during the drug deals.

24. On May 19, 2026, a federal grand jury returned a true bill of indictment charging Logan with possession of a firearm by a felon occurring on or about May 15, 2026.

25. In addition to Logan, three other members of the Garden Inn security team sold drugs and guns in controlled buys during the investigation.

26. Likewise, the execution of a federal search warrant on May 27, 2026, uncovered drugs and guns located inside rooms at the Property associated with members of the Garden Inn security team.

27. Incidentally, the investigation underlying this Forfeiture Complaint began following suspicious interactions from the hotel's security team with law enforcement.

28. For example, in August 2025, CMPD was called to investigate a shooting at the Garden Inn. While on scene, investigators learned that two shootings had taken place over a two-hour period[3] targeting subjects staying at the hotel, one of whom was known to CMPD as a drug dealer in Charlotte.

---

[3] This two-hour period also spanned two days (August 25 and 26), as the first shooting occurred shortly before midnight.

29.     During the shooting investigation, the hotel security team refused to allow CMPD access to the camera system that had recorded the shootings—unusual behavior for those purportedly tasked with ensuring the safety of the hotel's occupants. Moreover, the Garden Inn security and staff stated that they did not see anything, nor did they call the police after the shooting.

30.     Based on their training and experience, the investigating detectives suspected the Garden Inn's security team was trying to protect the identity of one of the shooters—a suspicion later corroborated by the discovery that two of the suspected shooters, Delawn Moore (a.k.a. "Hurk") and Timothy Massey, were staying at the hotel.

31.     The Garden Inn staff did not permit CMPD to access the Property's camera system, until, among other things, CMPD began drafting a search warrant. Ultimately, when a Garden Inn manager did allow CMPD to view the hotel's camera footage, it clearly showed Garden Inn security members observing the shooting—contrary to what Garden Inn staff previously told CMPD.

 







32. Thus, it appears that the Garden Inn security team—rather than cooperate with law enforcement to help curtail criminal activity on the Property—attempted to impede CMPD's investigation by (a) not allowing access to security footage that clearly showed the shooting incident and shooters involved, and (b) falsely stating the security team did not witness the incident.

33. CMPD ultimately arrested Moore and Massey for the shooting. Both of these occupants of the Garden Inn were known mid-level drug dealers and convicted felons with extensive histories of violent crime.

34. Thereafter, the Federal Bureau of Investigation ("FBI") and CMPD partnered in December 2025 to investigate the ongoing criminal activity occurring at the Garden Inn, as well as the surrounding West Sugar Creek and Interstate 85 corridor.

35. At the outset of this investigation, CMPD detectives were familiar with the area due to the extensive number of criminal investigations previously conducted there. But, law enforcement had noticed that a growing amount of the criminal activity in the area was taking place at the Garden Inn specifically, and more suspected criminals were staying there. Further, those arrested, as well as reliable confidential informants, indicated they had purchased drugs and guns directly from Garden Inn staff and security.

36. The increasing calls for service at the Property prior to outset of the investigation are detailed graphically below:



(Calls for service at 4904 Reagan Drive from 1/1/2019 to 12/31/2025)

***The drug trafficking facilitated by the Property***

37.     The Garden Inn has been a hub of drug trafficking and other criminal activity for years.

38.     As a result, law enforcement developed multiple confidential informants and conducted a significant number of controlled drug and firearm purchases at the Property from January 2026 to May 2026.

39.     For example, on January 23, 2026, law enforcement conducted a controlled purchase of illegal narcotics and an illegal firearm from Kateria "Big Baby" Flowers in Garden Inn Room 305, wherein Flowers sold a pistol and crack cocaine to a confidential informant ("CI").

40.     CMPD was familiar with Flowers from a prior 2022 investigation wherein law enforcement established that she was dealing crack cocaine and fentanyl out of a hotel room. During that investigation, Flowers admitted to officers that she sold drugs, specifically crack

cocaine and fentanyl, and a search of her hotel room found both guns and illegal drugs attributable to her.

41. Hotel rent rolls list Flowers as renting Garden Inn Room 305 since at least January 2026, and CIs have confirmed to law enforcement that Flowers has been in that room for months, as well as sold drugs out of it.

42. Flowers is a violent convicted felon with arrests and convictions for robbery (multiple times), firearm by felon, assault by strangulation, and selling cocaine. On May 19, 2026, a federal grand jury returned a true bill of indictment charging Flowers with three counts of distribution of a controlled substance, two counts of possession of a firearm in furtherance of drug trafficking, and two counts of possession of a firearm by a felon, occurring on or about January 23, 2026, January 29, 2026, and April 27, 2026.

43. On January 29, 2026, law enforcement conducted a controlled purchase of a pistol and fentanyl from Flowers in Garden Inn Room 305.

44. On February 11, 2026, law enforcement conducted a controlled purchase of suspected crack cocaine from Justin "Flip" Gadson in Garden Inn Room 111.

45. CMPD was familiar with Gadson due to his frequent involvement with the police over the years in the area surrounding the Garden Inn—namely, multiple instances of him fleeing law enforcement on foot. Additionally, on October 26, 2013, Gadson was convicted in North Carolina superior court of possession with intent to sell and deliver a schedule VI controlled substance and possession of a schedule VI controlled substance.

46. That same day (February 11, 2026), law enforcement conducted a controlled purchase of suspected fentanyl from Nelson "Steel" Lewis in Garden Inn Room 304.

47. Law enforcement developed information that Lewis stayed at the Garden Inn for the duration of the investigation (confirmed by hotel rent rolls), and that Lewis stored and sold illegal narcotics out of the hotel.

48. Moreover, Lewis sold fentanyl out of the Garden Inn during the investigation that appears to have been mixed with yellow and/or purple colors. This is a common tactic used by drug dealers so that users/addicts will want to buy directly from that specific dealer with an understanding of the potency of the drug being sold (essentially creating the equivalent of brand recognition for their drugs).

49. Lewis has a criminal history that involves illegal narcotics and has been convicted of possession of a firearm by felon, illegal narcotics violations, and assault charges.

50. On February 18, 2026, law enforcement conducted another controlled purchase of illegal narcotics from Lewis. Lewis agreed to sell a CI fentanyl, and the drug deal was done in the Garden Inn elevator after Lewis directed the CI to the second floor of the Property.

51. On February 26, 2026, law enforcement conducted a controlled purchase of fentanyl from Lewis inside Garden Inn Room 334.

52. Notably, the pills purchased from Logan on each occasion listed in this Complaint were submitted to a laboratory to be tested, and a chemist determined that the pills—which Logan represented to be ecstasy (or MDMA)—were, in fact, methamphetamine pills.

53. That same day (February 26, 2026), law enforcement conducted a controlled purchase from Justin "Justo" Day in Garden Inn Room 126 of a pistol and fentanyl.

54. Day is known to law enforcement for selling drugs in the West Sugar Creek area and has a long criminal history that includes robbery and narcotics crimes with several convictions for robbery, and possession of firearms by a felon. Unlike other drug traffickers at the Garden Inn,

Day appears to have switched hotels rooms on occasion, as well as used fake names on the hotel rent rolls.

55. On March 4, 2026, Day agreed to sell fentanyl to a CI. Initially, Day told the CI that he was now staying at a different hotel in the Sugar Creek area, but then law enforcement observed Day crossing the street with his personal belongings. Day told the CI that he had been kicked out of the other hotel, and was returning to the Garden Inn. Day used a room at the Garden Inn to get the narcotics ready, and then sold the CI the fentanyl in the parking lot immediately outside of Garden Inn Room 215.

56. Law enforcement also conducted a controlled purchase from Lewis of fentanyl for inside Garden Inn Room 334 on March 4, 2026.

57. Similarly, on March 12, 2026, law enforcement conducted another controlled purchase from Lewis of fentanyl inside Garden Inn Room 334.

58. Logan also sold marijuana and purported ecstasy pills (later confirmed as methamphetamine) to a CI inside Garden Inn Room 102 on March 12, 2026.

59. On March 17, 2026, Michael "Slug" Boatwright sold fentanyl to a CI.

60. Boatwright is a known drug dealer who has been arrested many times and has convictions for robbery and possession with intent to sell and deliver cocaine. Investigators have also observed Boatwright engage in suspected narcotic sales around the area of West Sugar Creek Road and Reagan Drive.

61. On May 19, 2026, a federal grand jury returned a true bill of indictment charging Boatwright with distribution of a controlled substance occurring on or about March 17, 2026, and April 3, 2026.

62. At the time of the March 17 drug deal, Boatwright was living out of Garden Inn Room 227 (a fact confirmed by hotel rent rolls); however, he also walked around the area of Reagan Drive and West Sugar Creek to make street level sales. Consistent with that practice, Boatwright met the CI at the entrance to another hotel in the area (roughly a two-minute walk from the Garden Inn) because Boatwright was already out walking, and sold the fentanyl there. After completing the drug deal, Boatwright returned to the Garden Inn.

63. Also on March 17, 2026, law enforcement conducted a controlled purchase of a firearm and fentanyl from Day in Garden Inn Room 215.

64. Then, on March 23, 2026, Logan (wearing his Garden Inn security uniform) sold marijuana and purported ecstasy pills (later confirmed as methamphetamine) to a CI inside of Garden Inn Room 102.

65. Antonio "Cup" Craig was another Garden Inn security guard that sold narcotics to law enforcement during controlled buys. Craig has an extensive criminal history that includes robbery convictions as well as a federal crack cocaine distribution case where Craig was sentenced to over 200 months. Hotel rent rolls indicate he rented Garden Inn Room 232, and Craig also has a pending case for assault on a female where he listed his address as that hotel room.

66. More specifically, on March 23, 2026, law enforcement conducted a controlled purchase of crack-cocaine from Craig inside Garden Inn Room 232.

67. Logan then sold marijuana and purported ecstasy pills (later confirmed as methamphetamine) to a CI inside of Garden Inn Room 126 on March 31, 2026.

68. Also on March 31, law enforcement conducted a controlled purchase from Gadson at the Garden Inn, wherein Gadson agreed to sell a CI fentanyl and crack cocaine. Gadson agreed to sell the crack cocaine while in the parking lot of the Property because he had the crack cocaine

on his person, but Gadson told the CI that he had to go to his room for the fentanyl. Gadson then went straight to Garden Inn Room 205, and sold the fentanyl to the CI while inside the room.

69. On April 3, 2026, Boatwright sold fentanyl to a CI in Garden Inn Room 227.

70. Also on April 3, 2026, Kantrell "Trell" Moore also sold crack cocaine to a CI inside of Garden Inn Room 205.

71. Moore is a member of the Garden Inn security staff, and believed to be permitted to stay in room 205 without cost as part of his security role there. Notably, Moore is a violent convicted felon with an extensive history of arrests including robbery, assaults, kidnapping, and drug sales.

72. On April 9, 2026, law enforcement again conducted a controlled purchase of crack cocaine from Moore inside Garden Inn Room 205.

73. Similarly, Craig sold crack-cocaine to a CI inside of Garden Inn Room 232 on April 9, 2026.

74. On April 22, 2026, law enforcement conducted a controlled purchase of suspected fentanyl from Isaiah "Kayso" Ikard at the Garden Inn. The deal took place in the Property's parking lot, inside of a black Mitsubishi SUV. During the sale, Ikard walked into the hotel's stairwell, weighed the drugs, and sold them to a CI.

75. Kayso Ikard, who also sometimes goes by the street name "Peso," is a security guard at the hotel, and lives in Garden Inn Room 214 with this brother, Dameion Ikard (also a security guard).[4]

---

[4] On May 18, 2026, a CI observed Dameion Ikard with crack cocaine, fentanyl, and a pistol style firearm with an extended magazine inside of Garden Inn Room 214.

76. Kayso Ikard is not a convicted felon but has been arrested for violent crimes, firearms related offenses, and drug crimes in the last few years. He also has a pending state arrest for trafficking fentanyl that took place during the investigation period.

77. The Garden Inn security staff thereafter continued to traffic illegal drugs when Logan sold purported ecstasy pills (later confirmed as methamphetamine) to a CI inside Garden Inn Room 126.

78. The Garden Inn security staff was involved in another controlled purchase of illegal narcotics on April 27, 2026, when Kayso Ikard agreed to sell fentanyl to a CI. But, during the phone conversation to set up the drug deal, Ikard directed the CI to go see "Big Baby," and the CI ultimately purchased the suspected fentanyl from Flowers inside of Garden Inn Room 305.

79. Flowers also sold a pistol and fentanyl inside Room 305 in a May 6, 2026, controlled purchase.

80. On May 15, 2026, Logan (the Garden Inn security chief) sold marijuana and a firearm inside of Garden Inn Room 126.

81. On May 16, 2026, a CI informed law enforcement that he/she had observed Trell Moore (Garden Inn security staff) with crack cocaine and a Mossberg shotgun in Garden Inn Room 205. As a convicted felon, Moore is prohibited from possessing firearms.

82. On May 17, 2026, a CI observed Gadson with crack-cocaine and fentanyl in Garden Inn Room 205, and on May 18, 2026, a CI informed law enforcement that Gadson, while staying in Garden Inn Room 205, was selling drugs in the parking lot of the Property.

83. On May 21, 2026, law enforcement conducted a controlled purchase of fentanyl from Lewis inside Garden Inn Room 217.

*One Garden Inn source of supply*

84.     Law enforcement developed information indicating Naquan "Storm" Smith supplied narcotics to several of the drug traffickers selling at the Garden Inn. Smith is a convicted felon and Bloods gang member, whose convictions include trafficking cocaine and possession with intent to sell and distribute cocaine.

85.     During the investigation, Smith was found in possession of a firearm concealed in his vehicle during a January 2026 traffic stop. Smith confessed to being in possession of this firearm. Law enforcement seized Smith's cellphone and received court authorization to search the content of the phone. The evidence seized from the cellphone established that Smith was supplying several other well-known drug dealers with illegal narcotics, including Flowers. Additionally, pictures on the cellphone matched the firearm seized during the traffic stop.



86.     On May 19, 2026, a federal grand jury returned a true bill of indictment charging Smith with possession of a firearm by a felon.

*The execution of a federal search warrant at the Property*

87.     On May 27, 2026, law enforcement executed a federal search warrant at the Garden Inn. The search uncovered guns and drugs through the areas searched, some of which are detailed below.

88. A search of the Garden Inn front office uncovered suspected marijuana and assorted ammunition.

89. Garden Inn Room 227, believed to be associated with Michael Boatwright, contained, among other things: two Century Arms AK47s, two Glock pistols, drug paraphernalia, suspected marijuana, two digital scales, assorted ammunition, a naloxone package (used for opioid overdoses), and suspected crack cocaine.



90. Garden Inn Room 214, believed to be associated with Isaiah and Dameion Ikard, contained, among other things: a Glock pistol and ammunition, suspected crack cocaine, suspected marijuana, suspected oxycodone, and suspected narcotics pills.

91. Garden Inn Room 126, believed to be associated with Marcus Logan, contained, among other things: a Taurus 9mm pistol with no serial number, drug paraphernalia, and suspected ecstasy (or methamphetamine based Logan's past practice) pills.

92.     Garden Inn Room 205, believed to be associated with Kantrell Moore, contained, among other things: a Remington shotgun, assorted ammunition, crack cocaine, and a digital scale.

 

93.     Garden Inn Room 115, believed to be associated with Anthony Logan, contained, among other things: an American Tactical AR Pistol, assorted ammunition, suspected unknown narcotics, suspected marijuana, and a digital scale.



94.     Garden Inn Room 217, believed to be associated with Nelson Lewis, contained, among other things:  suspected marijuana, suspected MDMA, suspected narcotics pills, unknown white powder, two digital scales, drug paraphernalia, an American Tactical 556 Rifle, and a Glock pistol.

 

95.     Garden Inn Room 333, believed to be associated with Justin Day, contained, among other things: a Taurus pistol, drug paraphernalia with residue, and marijuana.

***The Property owner's knowledge and acquiescence to the criminal activity there***

96.     In late 2018 and 2019, as part of crime reduction efforts in the area, CMPD sought to work with area hotels and businesses (including the Garden Inn) to gain remote access to video surveillance cameras. Many businesses in the area consented to CMPD's access, and the access to over 225 live/playback capable video feeds led to hundreds of arrests and active investigations clearances. CMPD also recommended that hotels in the area limit single night cash rentals, not

rent to people within the local zip code and utilize the Mecklenburg County Sherriff's Office public portal to verify identities/criminal histories with emphasis on violent/narcotics charges.

97.     The Garden Inn's ownership and staff were not receptive to these requests, or even to allowing officers to review video footage for active investigations (*e.g.* the August 2025 shooting incident detailed above).

98.     In addition to the warnings regarding Logan (see paragraphs 21-22 above), CMPD had multiple conversations with Woodard directly regarding the drug use and drug sales at the Property, but that activity continued unabated.

## FIRST CLAIM FOR RELIEF
### (21  U.S.C. § 881(a)(7))

99.     The United States incorporates by reference the allegations set forth in Paragraphs 1 to 98 above as if fully set forth herein.

100.    The Defendant Property was used or intended to be used to commit or facilitated the commission of violations of 21 U.S.C. § 841(a)(1) (making it unlawful to knowingly or intentionally "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance") and § 846 (attempt and conspiracy).

101.    Thus, the Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7) which provides for the forfeiture of "[a]ll real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter [the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq*.]."

102.    The United States does not request authority from the Court to seize the Defendant Property at this time. The United States has or will, as provided by 18 U.S.C. 985(b)(2) and (c)(1):

a. post notice of this action and a copy of the Complaint on the Defendant Property;

b. serve notice of this action on the Defendant Property owners, and any other person or entity who may claim an interest in the Defendant Property, along with a copy of this Complaint; and

c. file a *lis pendens* in county records giving notice of the Defendant Property's status as a defendant in this *in rem* forfeiture action.

## PRAYER FOR RELIEF

By virtue of the foregoing, all right, title, and interest in the Defendant Property vested in the United States at the time of the commission of the unlawful act giving rise to forfeiture, 21 U.S.C. § 881(h), and has become and is forfeitable to the United States of America.

WHEREFORE, the United States of America respectfully prays the Court that:

(1) due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

(2) judgment be entered declaring the Defendant Property to be condemned and forfeited to the United States of America for disposition according to law; and

(3) the United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Defendant Property as required by 28 U.S.C. § 1921.

Respectfully submitted this 27th day of May, 2026.

RUSS FERGUSON
UNITED STATES ATTORNEY

/s/ Seth Johnson
J. Seth Johnson
Texas Bar No. 24083259
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 338-3159
Email: seth.johnson@usdoj.gov

## **VERIFICATION**

I declare under penalty of perjury that the factual information contained in the foregoing

Complaint is true and correct according to the best of my knowledge, information, and belief.

Executed on the 27th day of May, 2026.

_____

Dennis J Miller, CMPD Detective